<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ALONZO JENKINS,                    :
                                   :     Civil Action No. 03-2998 (FSH)
              Petitioner,          :
                                   :
         v.                        :     **OPINION**
                                   :
ROY L. HENDRICKS, et al.,          :
                                   :
              Respondents.         :


**APPEARANCES:**

Petitioner pro <u>se</u>                Counsel for Respondents
Alonzo Jenkins                          Gary A. Thomas, Esquire
Northern State Prison                   Off. of Essex Co. Prosecutor
P.O. Box 2300                           Essex Co. Courts Building
168 Frontage Road                       Newark, NJ 07102
Newark, NJ 07114


**HOCHBERG**, District Judge

     Petitioner Alonzo Jenkins, a prisoner currently confined at

Northern State Prison, has submitted a petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254.  The respondents are

Superintendent Roy L. Hendricks and the Attorney General of New

Jersey.

     For the reasons stated herein, the Petition must be denied.

### I.   <u>BACKGROUND</u>

A.   <u>Factual Background</u>

     The Brief of the State of New Jersey on appeal of the trial

court order denying Petitioner's state motion for post-conviction

relief summarizes the facts of the crime and the testimony against Petitioner.

On September 15, 1996, the victim, Yasin Bashir, was working in his Pizza 2000 restaurant located at 21 Court Street in the City of Newark.  The defendant, Alonzo Jenkins, also worked in the Pizzeria stacking chairs and handing out fliers.  The defendant had worked there for approximately two months.  Shahidah Sanders also worked at the store as a delivery person.

At approximately 1:00 p.m., the defendant's cohort, Felix Van Valen, entered the restaurant and placed a knife to the victim's chest.  Van Valen threatened to kill the victim, "I'm going to kill you, I want to kill you."

The defendant, who was chopping onions, upon observing Van Valen holding the victim at knifepoint, stopped chopping and went to the front of the restaurant and locked the door.  The defendant then went over to the cash register and attempted to open it.  When he realized that the cash register was locked, he asked Van Valen to ask Mr. Bashir for the combination to the cash register.  Mr. Bashir gave the co-assailant the combination, and the defendant opened the register and took out the money.  Approximately $135.00 was stolen from the register.  The defendant then removed money from Mr. Bashir's pockets while Van Valen held Mr. Bashir at knifepoint.

Throughout the ordeal, Mr. Bashir asked the defendant to help him, but the defendant responded, "We're not going to hurt you."  Mr. Bashir attempted to grab the knife from Van Valen, but was kicked, pushed, and cut with the knife.  The defendant and co-assailant then left the Pizzeria together.

Ms. Sanders testified that when she returned to the Pizzeria after her delivery, the door was locked and she saw two men holding Mr. Bashir in a corner.  When the two men began running towards the door, Ms. Sanders jumped into her car and followed the men as they ran down the street.  Ms. Sanders ran a red light while pursuing the two men and attracted the attention of two police officers.  When the officers pulled up next to Ms. Sanders' car, she told them about the

2

robbery.  Ms. Sanders then followed the police as they
chased the two individuals.  Ms. Sanders identified the
defendant as one of the individuals who robbed Mr.
Bashir and fled from the Pizzeria.

        Officer Vincenzo Peluso, a patrol officer in the
Newark Police Department, testified that he was on duty
on September 15, 1996 on routine patrol, when he
observed two males running past his car.  Officer
Peluso testified that Ms. Sanders approached him and
his partner and informed them that Pizza 2000 had just
been robbed.  Officer Peluso then exited his car and
ran after the defendant and Van Valen.  Officer Peluso
was able to apprehend Van Valen.  Officer Peluso was
unable to apprehend the defendant at this time.
However, upon investigation he subsequently learned the
defendant's identity.  The defendant was arrested on
March 3, 1997, by the Fugitive Squad Division of the
FBI.

        The defendant testified on his own behalf.  He
testified that he was in the store the day the robbery
occurred, but that he did not partake in the robbery.
He further testified that he fled the store because he
had an outstanding municipal court charge against him.
He did not return home after the robbery, but rather,
took a bus to his grandmother's house.  The defendant
claimed that after the armed robbery, he saw the victim
on several occasions without incident.

(Ra12 at 4-6 (citations omitted).)

        Petitioner testified at trial.  He did not dispute his

presence at the scene, but denied that he was a participant in

the crimes committed at the Pizzeria.  To the contrary,

Petitioner testified that he did not know Van Valen and that he

locked the door and took money out of the cash register, at the

instruction of Van Valen, so that neither he nor Mr. Bashir would

be hurt.  Petitioner admitted fleeing the scene, but provided an

alternative explanation for his flight.  (Transcript of October 16, 1997.)

B.  Procedural History

Defendant was convicted in the Superior Court of New Jersey, Essex County, Law Division, on October 17, 1997, of first-degree armed robbery, second-degree conspiracy to commit robbery, third-degree aggravated assault, and third-degree possession of a weapon for an unlawful purpose.  On November 12, 1997, the trial judge sentenced defendant to an aggregate term of imprisonment of 45 years, with a 15-year period of parole ineligibility.  On November 3, 1999, the Superior Court of New Jersey, Appellate Division, affirmed Petitioner's conviction and sentence.  On June 7, 2000, the Supreme Court of New Jersey denied certification.

On July 21, 2000, Petitioner filed a petition for post-conviction relief in the trial court.  On October 26, 2001, the trial court conducted an evidentiary hearing and denied relief.  On January 8, 2003, the Appellate Division affirmed the denial of relief.  On April 28, 2003, the Supreme Court of New Jersey denied certification.

Petitioner then timely filed his Petition for Writ of Habeas Corpus in this Court.[1]  Here, Petitioner asserts that his trial

─────────────

[1] Petitioner has filed a second and third state-court petition for post-conviction relief which raises issues unrelated to those raised in the original Petition for Writ of Habeas Corpus.

counsel failed to provide effective assistance, by (1) failing to conduct an appropriate investigation, (2) failing to interview Petitioner, (3) failing to examine evidence, including testimony given at the trial of Petitioner's alleged accomplice Van Valen (4) failing to interview witnesses, including two police officers who admitted that they could not identify Petitioner as a person they saw fleeing the scene, and (5) by failing to investigate and litigate pre-trial motions (a) challenging the arrest warrant for lack of probable cause and (b) to dismiss the indictment.

The relevant history of the state courts' treatment of Petitioner's claims is set forth in the opinion of the Superior Court of New Jersey, Appellate Division.[2]

> In his pro se petition for post-conviction relief, defendant contended, (1) that he had received the ineffective assistance of trial counsel by failure to conduct a pre-trial investigation, failure to examine evidence prior to trial, failure to conduct pre-trial preparation, and failure to consult with defendant prior to trial; ... . Defendant sought an evidentiary hearing. Defendant was represented by counsel on his PCR petition, and counsel filed a letter brief in support of defendant's application.

> On October 26, 2001, a hearing was conducted in the Law Division before Judge Donald S. Goldman on defendant's application for post-conviction relief. Defendant's trial counsel, Edward Jerejian, testified

_____

[2] Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

at that hearing.  After hearing the testimony and considering the arguments advanced by counsel, the judge delivered a comprehensive oral decision denying defendant's application.  The judge analyzed Jerejian's handling of the case and found it to be effective.  The judge also concluded that identification had not been charged because identification was not an issue as there had been no dispute concerning defendant's presence at the scene of the robbery; rather, the issue at trial was defendant's role during the incident. ...

On appeal, defendant presents the following arguments for our consideration:

POINT I
THE TRIAL COURT ERRED IN CONCLUDING THAT DEFENDANT RECEIVED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE UNITED STATES AND NEW JERSEY CONSTITUTIONS.

...

In his supplemental pro se brief, defendant advances the following arguments:

...

POINT II
THE TRIAL COURT ERRED IN DENYING DEFENDANT'S PETITION FOR POST CONVICTION RELIEF WHERE, AS HERE, DEFENDANT'S TRIAL ATTORNEY FAILED TO INVESTIGATE OBVIOUS SIGNIFICANT AVENUES OF DEFENSE, INCLUDING INTERVIEWING AND CALLING OF WITNESSES AND OTHERS WHO WOULD HAVE DIRECTLY EXCULPATED DEFENDANT, UTTERLY DEPRIVED DEFENDANT OF HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS OF LAW, AND A FAIR TRIAL.

...

After analyzing the record in the light of the written arguments advanced by the parties, we affirm substantially for the reasons articulated by Judge Goldman in his comprehensive oral decision delivered on the record at the October 26, 2001 hearing.

(Ra13.)

The opinion of Judge Goldman, referred to by the Appellate

Division, follows in pertinent part.

Okay.  Now, let me start off by saying that I
remember this case very, very, very well. ...

I use this case to talk about, and I think Mr.
Jerijian used it earlier, to talk about how I suggest
that young lawyers and law clerks and interns look at -
- watch the movie Rashomon, which is the Japanese story
about the seven -- six or seven people who view an
event, all the same event, and all take - have a
different take on it and its interpretation of what
happened.

I have one disagreement with, in my memory, with
Mr. Jerijian and Miss Childs-Swift, I don't think that
Mr. Basir was the key witness in the case.  I think
that Mr. Jenkins was the key witness in the case.

And I think the issue in the case was did Mr.
Jenkins run away because he was evidencing
consciousness of guilt in that process, or was he
running away for the reason that he stated, namely,
because of his prior record and because of outstanding
warrants and other things, he was afraid of being
wrongly accused for the crime.  And I think this case
rose or failed on his credibility with this jury.
Because the facts were essentially agreed upon by him,
by Mr. Basir.  Any disagreement as to the facts, in my
judgment, were essentially non-material.

What I want you to do is I want to tell you in
advance that I'm going to be denying the application
for post-conviction relief.

And Mr. Gerber, I want to make sure that -- so
that Mr. Jenkins' further Appellate review is preserved
properly to run a checklist and remind me when I'm done
if there's any issue that I failed to address.  The
last thing in the world we want to do is if he does go
that route, and if we -- and if I sustain that appeal
on the PCR in New Jersey, and he later seeks habeas
corpus relief, that there's a -- that he's denied the

opportunity to be heard on those issues for my failure to have addressed them.

...

Let me start out and deal with the items, and try to deal with them in the order in which they are presented.

First of all, Mr. Jerijian's theory, strategy, in my judgment was not only not ineffective, but to the contrary, very effective.  And they lost.  And I guess maybe one could say that the proof was in the pudding, and if it lost, it didn't work.  But under the circumstances, certainly for the defendant to have claimed that it wasn't him, and that he wasn't there, would have led to his certain downfall.

Based upon the fact that Mr. Basir knew him, the -- the application for employment, other -- other evidence that might have otherwise been available if that were the claim, Mr. Jerijian presented a very, very credible defense.  Mr. Jerijian expresses his continued confidence in the defendant's innocence.

I had no judgment as to that.  It's not my job.  That was the jury's job.  For better or for worse, the State was able to convince 12 jurors of the defendant's guilt.  And I don't look behind that finding, and I accept it.  Whether or not I would have made the same finding if I were a juror, not relevant.

Under those circumstances, the alleged failures of trial counsel to interview, for example, Detective Eatmon, to do a pretrial investigation, to make appropriate pretrial motions, to interviewing the victims, interviewing the same witnesses, interviewing the police officers, very frankly are all irrelevant, immaterial, would not have been appropriate.  And had he done so, merely would have taken the risk of highlighting, increasing their memories, have them remember more incriminating things, gain their -- you know, just raise issues that didn't exist, and run the risk of having more inculpatory evidence submitted rather than otherwise.

With respect to identification issues, I think that Mr. -- Mr. Jerijian was absolutely correct in --

in not forcing those identifications.  He already
demonstrated that -- that the witnesses -- did not, in
fact, identify the defendant as the person that was --
that was fleeing down the street.

I'm satisfied under the circumstances, the failure
to challenge the arrest warrant or the indictment was
reasonable under the circumstances, and perfectly
appropriate.  It would have been a frivolous motion.
It would have merely diminished both the defendant and
counsel's credibility before the Court by making such a
frivolous application.

And counsel's contention that -- that there is some
irregularity in having the testimony from -- from
one Grand Jury, i.e., the Van Valen one to be heard and
read at the other is improper.  It's simply -- it's
simply wrong.

The law is clear in that there has to be -- there
has -- the law is clear in that to sustain a claim for
in -- for inappropriate conduct at a Grand Jury, that
suffice it to say that the draconian remedy of
dismissal of the indictment only is appropriate[] where
there is an intentional misconduct by the State before
the Grand Jury.  That's not the case here.  See State
versus Krivacska, it's an Appellate Division opinion
April 23rd, 2001.  There is noth -- the motion wouldn't
have been granted anyway, so that's another basis that
there's no -- that -- nor would any motion have been
successful to dismiss a complaint under the
circumstances here.

...

Again, this -- the failure of the officers to
identify the defendant was not suppressed.  Mr.
Jerijian said he knew about it.  And again, in any
event, the risk of -- of focusing on that would have
been worse than the way that -- the way that he got it.
And so where he was, again, two fold.  A, no
ineffective assistance; and B, even if one were to
think it were ineffective, no material impact, no
demonstration of the second prong of the Strickland
test.

...

9

Right.  The failure to instruct on identification.

The problem here is that the identification wasn't an issue.  And I want to point out exactly what happened on this issue, and exactly how. ...

And I say, "Is there something -- the identification talks about whether or not the jury finds the defendant was at the scene of the crime.  And clearly I don't think there's any dispute as to that.

"MR. JERIJIAN: I'm going to withdraw that."

The bottom line answer is that Mr. Jerijian withdrew the request reasonably, because the whole identification charge deals with the identity of the defendant being -- the perpetrator being at the scene, and he admitted it.  That's why I didn't charge identification. ...

And again, I think it wasn't -- it was not ineffective assistance of counsel for Mr. Jerijian to have withdrawn that request under the circumstances. He was still free to argue, as he did in his summation, the credibility issue with respect to the -- who was running away and the -- and the -- and the skin tone, and the -- and all those issues that he did raise.  It was not ineffective.  And again, it wouldn't have made it -- it would have not have made -- even if I had charged identification, it would have been harmful to charge identification say -- to ask the jury to come to the conclusion as to whether or not Mr. Jenkins was at the scene.  It would have reinforced his being there, his presence, his participation, his activity, and would have been detrimental to Mr. Jenkins.  Mr. Jerijian was wise in withdrawing that request.

...

I'm satisfied under the circumstances that for the reasons set forth [herein], that under -- that the defendant was, in fact -- did receive at the trial effective assistance of counsel, both at trial and on appeal.  That his due process rights, his equal protection rights have all been protected, and have all been -- and none -- and none of which have been violated.  And there are no grounds either under the State or Federal constitutions to justify any action

10

whatsoever with respect to the conviction which was
regular, appropriate, and correct in all respects,
including the sentence there under.

(Transcript of October 26, 2001, at 102-112, 116.)

On March 24, 2005, after the Answer in this matter had been filed, Petitioner submitted to the Court a Supplemental Memorandum of Law in which he asserted three new claims.  Nearly two years earlier, on July 24, 2003, this Court had advised Petitioner, pursuant to <u>Mason v. Meyers</u>, 208 F.3d 414 (3d Cir. 2000), of the consequences of filing a petition for writ of habeas corpus under 28 U.S.C. § 2254, including the requirement that a petitioner must marshal in one § 2254 petition all the arguments to collaterally attack the state judgment within one year of the date on which the judgment of conviction becomes final.  Petitioner responded that he chose to have the pending § 2254 petition "ruled upon as submitted."

The Court construes Petitioner's Supplemental Memorandum of Law as an application for leave to file an Amended Petition.  The application is not timely, having been made long after the expiration of the limitations period and after Petitioner had advised the Court that he chose to have the Petition decided as originally submitted.  The Court will deny the application for

leave to file an Amended Petition and will disregard the

arguments made in the Supplemental Memorandum of Law.[3]

_____

[3] Alternatively, the claims asserted in the Supplemental
Memorandum must be denied as meritless.  See 28 U.S.c.
§ 2254(b)(2).  Ineffective assistance of PCR counsel is excluded
as a ground for federal habeas relief, see 28 U.S.C. § 2254(i).
Blakely v. Washington, 124 S.Ct. 2531 (2004), is not
retroactively applicable to cases on collateral review.  See
generally In re Olopade, 403 F.3d 159 (3d Cir. 2005) (finding
that the decision of the Supreme Court in United States v.
Booker, 125 S.Ct. 738 (2005), does not apply retroactively to
cases on collateral review); Lloyd v. United States, 407 F.3d 608
(3d Cir. 2005) (same); United States v. Swinton, 333 F.3d 481 (3d
Cir. 2003) (holding that Apprendi v. New Jersey, 503 U.S. 466
(2000), does not apply retroactively to cases on collateral
review); In re Turner, 267 F.3d 225 (3d Cir. 2001) (holding that
Apprendi does not apply retroactively to cases on collateral
review).  See also United States v. Price, 400 F.3d 844, 849
(10th Cir. 2005) (Blakely does not apply retroactively to cases
on collateral review); United States v. Enigwe, 2005 WL 928536
(E.D. Pa. April 18, 2005) (same).  Finally, Petitioner has failed
to establish a federal constitutional violation with respect to
his sentence.  A federal court's ability to review state
sentences is limited to challenges based upon "proscribed federal
grounds such as being cruel and unusual, racially or ethnically
motivated, or enhanced by indigencies." See Grecco v. O' Lone,
661, F.Supp. 408, 415 (D.N.J. 1987) (citation omitted).  Thus, a
challenge to a state court's discretion at sentencing is not
reviewable in a federal habeas proceeding unless it violates a
separate federal constitutional limitation.  See Pringle v. Court
of Common Pleas, 744 F.2d 297, 300 (3d Cir. 1984).  See also  28
U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67 (1991);
Lewis v. Jeffers, 497 U.S. 764, 780 (1990).
     "The Eighth Amendment, which forbids cruel and unusual
punishments, contains a 'narrow proportionality principle' that
'applies to noncapital sentences.'" Ewing v. California, 538
U.S. 11, 20 (2003) (citations omitted).  The Supreme Court has
identified three factors that may be relevant to a determination
of whether a sentence is so disproportionate to the crime
committed that it violates the Eighth Amendment:  "(1) the
gravity of the offense and the harshness of the penalty; (ii) the
sentences imposed on other criminals in the same jurisdiction;
and (iii) the sentences imposed for commission of the same crime
in other jurisdictions." Solem v. Helm, 463 U.S. 277, 292
(1983).  More recently, Justice Kennedy has explained that Solem

II.   <u>28 U.S.C. § 2254</u>

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254 now provides, in pertinent part:

> (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
>
> With respect to any claim adjudicated on the merits in state court proceedings, the writ shall not issue unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determinated by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

---

does not mandate comparative analysis within and between jurisdictions, <u>see</u> <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1004-05 (Kennedy, J., concurring in part and concurring in judgment), and he has identified four principles of proportionality review--"the primacy of the legislature, the variety of legitimate penological schemes, the nature of our federal system, and the requirement that proportionality review be guided by objective factors"--that "inform the final one: The Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime," <u>id.</u> at 1001 (citation omitted) <u>quoted with approval in</u> <u>Ewing</u>, 538 U.S. at 23.  Petitioner has failed to establish that his sentence is grossly disproportionate to his crime.

A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000) (O'Connor, J., for the Court, Part II).  A state court decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply," (although the Supreme Court expressly declined to decide the latter).  Id. at 407-09.  To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. Id. at 409.  In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of inferior federal courts. Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

14

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  Chadwick v. Janecka, 302 F.3d 107, 116 (3d Cir. 2002) (citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  See Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  See also Schoenberger v. Russell, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal caselaw, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

Although a petition for writ of habeas corpus may not be granted if the Petitioner has failed to exhaust his remedies in state court, a petition may be denied on the merits notwithstanding the petitioner's failure to exhaust his state court remedies.  See 28 U.S.C. § 2254(b)(2); Lambert v.

Blackwell, 387 F.3d 210, 260 n.42 (3d Cir. 2004); Lewis v.

Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

Finally, a pro se pleading is held to less stringent

standards than more formal pleadings drafted by lawyers.  Estelle

v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S.

519, 520 (1972).  A pro se habeas petition and any supporting

submissions must be construed liberally and with a measure of

tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998);

Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989);

United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969),

cert. denied, 399 U.S. 912 (1970).

III.  ANALYSIS

Petitioner asserts that his trial counsel failed to provide

effective assistance, by (1) failing to conduct an appropriate

investigation, (2) failing to interview Petitioner, (3) failing

to examine evidence, including testimony given at the trial of

Petitioner's alleged accomplice Van Valen (4) failing to

interview witnesses, including two police officers who admitted

that they could not identify Petitioner as a person they saw

fleeing the scene, and (5) by failing to investigate and litigate

pre-trial motions (a) challenging the arrest warrant for lack of

probable cause and (b) to dismiss the indictment.  Petitioner

also characterizes the constitutional basis of his claim as a

denial of due process and equal protection.

16

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI. The right to counsel is "the right to <u>effective</u> assistance of counsel."  <u>McMann v. Richardson</u>, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  <u>Strickland</u> at 694. Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u> at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  <u>Id.</u> at 695.

The performance and prejudice prongs of <u>Strickland</u> may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed."  <u>Id.</u> at 697.

17

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. at 690-91.  If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the defendant within the meaning of Strickland.  See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

Here, the PCR court correctly identified Strickland as the governing federal law.  Following an evidentiary hearing, the PCR court determined that Petitioner had failed to establish both the performance and prejudice prongs of the Strickland test.  The determinations of the state courts are neither contrary to nor an unreasonable application of federal law.  Nor did the state court proceedings result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Accordingly, Petitioner is not entitled to relief.

18

IV.   <u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003).

Jurists of reason would not disagree with this Court's resolution of Petitioner's constitutional claims.  Accordingly, no certificate of appealability shall issue.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.


     /s/ Faith S. Hochberg
United States District Judge

Dated:  March 8, 2006

19